## Buffington *versus* Quantin.

1. A *vendor* of a thing rejected and unpaid for may have it sold at auction on the vendee's account, and charge the vendee with the difference of price; but a *vendee* who receives the thing into his possession before he has become acquainted with its qualities, if it be not of the description contracted for, may retain it and claim a reduction from the price; or reject it and rescind the contract; and on the refusal of the vendor to take it away, the vendee may leave it at his door, giving him notice of the fact, but he is not at liberty to send it to auction.

2. A person contracted for two sofas, which, when delivered, he alleged were not such as were ordered. The vendee tendered them to the manufacturer, who refused to receive them. The vendee soon afterwards notified the maker that if he did not remove them, he would send them to auction. Not being removed by the vendor, the vendee had them sold at auction: it was *held*, that the vendee was bound to pay for the sofas what they were worth.

ERROR to the District Court of *Philadelphia.*

This was an action of assumpsit by A. Quantin *v.* L. W. Buffington, to recover $165, the price demanded for two sofas which Quantin had made under an order from Buffington.

On the trial, the plaintiff below proved his original entries, charging two sofas to defendant below, and closed his case.

Defendant below then offered Benjamin Buffington, who testified that "*upon the day of the delivery* of the sofas to defendant, he *returned the sofas to* the plaintiff. I called on Mr. Quantin with the Doctor; he told the plaintiff he would not keep the articles; this was the same day the articles were delivered to defendant; defendant then went home and returned the sofas; Quantin refused to receive them. Dr. Buffington then told him that he had now returned them to him, and if he wouldn't take them, he could have them whenever he sent for them; that he, defendant, would never pay for them. They remained in the Doctor's house a week, and then he notified the plaintiff that if he didn't take the articles away by a certain day from his house, he would send them to auction. This is the copy of notice:

"*Philadelphia, June* 2, 1848.
"To A. Quantin.

"Sir:—You are hereby notified that the two sofas sent by you to my house, are still here, and are in the way of my family. If they are not removed on or before June the 6th, 1848, I will send them to Thomas & Son's auction store, in Walnut, above Third street, to be sold to the highest and best bidder; all the expenses for so doing to be charged to yourself, and the balance returned to you."

It was signed by defendant.

[Buffington *v.* Quantin.]

The witness continued : "The plaintiff did not come for them; the sofas were sold at Thomas's ; I went with the Doctor when he tendered to the plaintiff the money the sofas had brought at auction, and the bill from the auctioneer also.   Plaintiff declined to receive them.   Before the sale, defendant notified plaintiff of the day and hour of sale, and that he might take the articles if he chose, as he (defendant) was not responsible for them.   *Defendant* was not at home when the sofas came."

N. Jennings, auctioneer, testified as to selling the goods at auction, and the price corresponded with what was offered to the plaintiff.

Defendant closed.

His Honor charged the jury :—"This is an action to recover the price of two sofas; it presents a question of fact wholly for your decision.   You have been asked by the defendant on the evidence to infer a special contract; the plaintiff asks otherwise, and says there was no special agreement.   When an article is ordered of a particular kind, but turns out not to be of the kind ordered, or of an inferior quality, the party is not bound to take it, or he may ask a reduction in price.   If he refuses to accept them, he may send them back or give notice to send for them, or he may place them in a store ; but if he sells them, he is bound to pay for them, and he cannot rescind the contract.

"The sale was an act of ownership which bound him and negatived a rescission of the contract, and he sold them at his peril, and was liable for the difference of the price they brought at auction and their real value, whatever the jury might find it to be. The defendant might and had a right to place them at a store on storage, or leave them at the plaintiff's door if the plaintiff refused to receive them; but if he sells them he ought to pay for them.

"If the jury are of opinion that the sofas were not worth more than they brought, the defendant ought not to be made to pay more."

To the charge, defendant's counsel excepted.

The case was argued by *Morris*, for plaintiff in error.—1. The rule declared in the charge would compel a vendee to assume the expense of storage of goods which he disowned, or perhaps lead to its injury or destruction by leaving it at the door of the vendor.

2. The question of acceptance or non-acceptance was taken from the jury, and proof of delivery and acceptance by the vendee was necessary: 5 *Wend.* 253 ; 2 *B. & C.* 513.   The delay to dis-

[Buffington *v.* Quantin.]

affirm a contract, or acts inconsistent with the disaffirmance, are for the jury: 13 *Johns.* 294; 3 *Wh.* 369.

"After the property in goods has vested in the vendee by contract and part delivery, if he refuses to receive the residue, *the vendor, on a tender with notice that he shall sell if not accepted, and hold the vendee responsible for the deficiency, may abandon or dispose of the goods bona fide, as agent of the vendee, to the best advantage by sale at auction,* and hold the vendee liable for any deficiency between what he actually received and what he agreed to buy:" Sands *v.* Taylor, 5 *Johns.* 395; 5 *Ser. & R.* 19; 2 *Wh. Dig.* 738.

These cases are to the point, and the difference in them and the present is that they are the reverse of this. In those cases the vendor sold at auction; in this, the vendee. But where is the difference in principle? It may be alleged that the vendor has a lien on the goods for his price; but if this were true in law, the law would not give him such a mode, as a sale at auction, to enforce payment, if the principle were not universal in its application to vendor and vendee. And besides, there might be thousands of cases where the vendor had no lien, as when he was to take a note on time, or similar instances. There can be no reconciliation of this contradiction, except by applying the principle universally; and on this ground alone this judgment should be reversed.

*Guillou*, for defendant in error.—The defendant objected that the sofas were not of the required length, and were not otherwise of the description agreed upon, but he failed to establish such defence. The sofas were sold for $80. It was a question of fact whether he had such objection to the articles as justified him in rescinding the contract. The jury have found that he had not.

The cases cited on the part of the plaintiff in error, rest upon the principle that a public sale under a lien does not cancel, but is in affirmance and support of the contract. But here it is insisted that the sale was a *disaffirmance* of the contract.

Jan. 30. Per Curiam.—The vendor of a thing rejected and unpaid for, may have it sold at auction on the vendee's account, because he has no other means of holding the vendee to the bargain, and, at the same time enforcing his lien for the price. As he could not have the thing and the price of it too, an action for the price would result in nominal damages, and the event would virtually be a rescission of the contract. He is therefore allowed to sell the thing at auction, and charge the vendee with the difference of price. But a vendee who receives the thing into his possession, before he has become acquainted with its qualities, has, if dissatisfied, but one of two courses to pursue: either to retain it and claim a deduction, or reject it and attempt to rescind the contract.

[Buffington *v.* Quantin.]

In pursuing the latter, he has no contract to enforce. His game is to get rid of the bargain, by rejecting the vendor's performance of his part of it. To this end it is necessary that he exercise no act of ownership, or give the property no direction but what is necessary to send it in specie to the vendor. He is not at liberty to destroy it by wantonly exposing it; but on the refusal of the vendor to take it away, he might leave it at his door, giving notice of the fact. But he might not send it to auction, because the necessities of the case would not require it. The charge of the judge was therefore unexceptionable.

Judgment affirmed.