# Marquette-Bailey Lumber Company, Appellant, *v.* Gibboney.

*Contracts—Contracts for the sale of lumber—Agency—Authority of agent—Charge of court—Refusal to accept goods—Exercise of dominion over goods after refusal to accept.*

In an action of assumpsit for breach of contract the plaintiff proved the contract of sale and the delivery of a carload of lumber and rested. The defendant introduced evidence to the effect that the quality of the lumber had been misrepresented and that, upon defendant's refusal to accept the lumber, a new contract was entered into between defendant and plaintiff's agent, whereby the defendant was to pay the freight and unload the lumber, and plaintiff was to reimburse the defendant for the freight and unloading and move the lumber as soon as it could find a place for it.

Under such circumstances the court improperly charged the jury that "the burden was on the plaintiff to establish the new contract by the weight of the evidence," and that "the plaintiff could not

recover in this action on the contract, as presented in the pleadings, because it proceeded to establish a new arrangement." The issue was thus shifted by the court to an inquiry not suggested by the plaintiff in the statement of claim, nor advanced by it in support of its action.

There was no evidence of the authority of the agent to enter into an agreement, releasing the defendant from his liability to the plaintiff, nor did the agent sell the lumber to the defendant; the negotiation was directly between the parties. The agent's business was to sell lumber, not to release the debtors of his employer from their liability. As such agent he would have no implied authority to settle the disputed claims or  to release his principal's legal demands. Nothing less than a general or special authority, or a ratification by the principal, could give force to such act.

Where a purchaser receives merchandise into his possession before he knows what its quality is, he has, if dissatisfied, two courses, either of which he may adopt. He can retain it and claim a reduction because of different or inferior quality or he can refuse to receive it and attempt to rescind the contract. In the latter case, not having any right of property, he cannot exercise any rights of ownership over it, nor can he sell it where the necessities of the case do not warrant such action.

Argued October 27, 1925.  Appeal No. 202, October T., 1925, by plaintiff, from judgment of C. P. Bedford County, November T., 1923, No. 95, in the case of Marquette-Bailey Lumber Company v. George H. Gibboney, trading as Cottage Planing Mill Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Reversed.

Assumpsit on a written contract.  Before BAILEY, J.

The facts are stated in the opinion of the Superior Court.

Verdict for defendant and judgment thereon.  Plaintiff appealed.

*Error assigned* was, among others, the charge of the court.

*H. E. Hackney,* of *Shelby, Henderson and Hackney,* and with him *E. M. Pennell,* for appellant.

*Alvin L. Little,* for appellee.

OPINION BY HENDERSON, J., February 26, 1926:

The plaintiff sold to the defendant a quantity of lumber. The contract consisted of an order in writing from the defendant and an acceptance in writing by the plaintiff. The subject of the contract was a car load of Wisconsin white pine which was ordered by a letter dated February 21, 1923. The letter contained an order for one-half car of Idaho white pine, but this was not filled because of a lack of the material answering the description in the order. That part of the order relating to the subject of the controversy was in these words: "Also, please enter our order for one car load of Wisconsin as a sample, in the rough, three fourth of the car of 4/4, and one fourth car 6/4, being No. 1, 2, 3 and 4. We understand that this stock is dry, and that you will give it to us as promptly as possible." On the 24th of the same month, the defendant wrote to the plaintiff acknowledging receipt of the letter of the plaintiff of February 22, relating to "stock from Idaho in the rough" and concluded as follows: "In reference to the second paragraph of your letter Wisconsin white pine, would advise that you might ship us a car of the No. 1, 2, 3 and 4 common, about an equal quantity of each, in order that we can see the grade of stock." The plaintiff therefore shipped the lumber to the defendant. As billed the car contained:

| | |
|---|---:|
| 10,809 feet #1 Com. 4" and wider at .. | $886.34 |
| 9,209 feet #2 Ditto at $75 ........... | 690.68 |
| 5,429 feet #3 Ditto at $50 ........... | 271.45 |
| | $1848.47 |

The prices charged were those quoted to the defendant by the plaintiff before the shipment. Delivery was made F. O. B. at Everett, Pa., the defendant's place of business. The car was placed on the defendant's switch and a part of the lumber was unloaded. After

an examination of it, the defendant refused to receive it as shown in a telegram to plaintiff as follows:

"Marquette Bailey Lbr. Co.
   Title and Trust Bldg., Uniontown, Penn.

Southern 186601 Here AND IS REFUSED ACCOUNT QUALITY OF STOCK ADVISE AGENT DISPOSITION.

COTTAGE PLANING MILL CO."

This was followed by a letter of the defendant to the plaintiff the next day which contained a positive refusal of the lumber; the reason given being that it was not as represented, "not as good as our native stock." At the trial the plaintiff proved the contract of sale and the delivery of the lumber at its destination and rested; thereupon the defendant introduced the defense set forth in the affidavit of defense which was (1) that Mr. Cobler, an agent of the plaintiff, came to the defendant's place of business about the 28th of April, 1923, and had a conversation with the defendant in regard to the lumber, at which time he went to see it and said it was not as explained or represented to the defendant and that after some argument in regard to the matter, they agreed that defendant unload the lumber and send the bill to the plaintiff for the freight and unloading, plaintiff to reimburse the defendant "for the car and move the lumber as soon as they could find a place for it;" whereupon the defendant paid the freight and unloaded the lumber. Afterward the defendant drew a draft on the plaintiff for freight, demurrage and expense of unloading the car. This draft was refused by the plaintiff. The defendant then notified the plaintiff under date of May 7, 1923, that the car would be on storage from the 10th of that month "and we further serve notice on you that we absolutely refuse this car of stock, and did in the first place, and only unloaded the same for your risk, and credit. We

assume no responsibility whatever for the lumber in any shape or way, and this is your final notice of the same." On October 26, 1923, the defendant sold the lumber at auction for the sum of $1200 after having given public notice of the sale by hand bills and by advertisement in a local newspaper.

The other defense (2) was that the plaintiff had misrepresented the quality of the lumber. The learned trial judge in the charge instructed the jury that the plaintiff could not recover in this action on the contract as presented in the pleadings because it proceeded to attempt to establish a new arrangement between the plaintiff and the defendant, and that the only thing which remained of the old contract was the price to be paid for the several grades of lumber. "The new arrangement" referred to was the allegation above recited of the conversation between Mr. Cobler and the defendant with reference to paying the freight and unloading the lumber. The jury was further instructed that the real question for their consideration was whether at that time there was a new contract made between the parties? "In other words, was there a contract whereby Mr. Gibboney agreed to unload this lumber and pay the freight thereon and pay for the lumber in accordance with the grades, fixed by an inspector thereafter to be called in to examine this lumber?" "now the burden is upon the plaintiff to establish that new contract by the weight of the evidence;" that before they could find for the plaintiff they must be satisfied by the superior weight of the evidence that there was a new contract. The jury was further instructed that it was not material whether the lumber was of the quality discussed by Mr. Cobler with the defendant at a prior time. The issue was thus shifted by the court to an inquiry not suggested by the plaintiff in the statement of claim nor advanced by it in support of its action. A prima facie liability was

established when the plaintiff closed its evidence. The necessity was then on the defendant to relieve himself from performance of his contract and this continued throughout the trial. At no stage of the case, as we read the evidence, did the plaintiff introduce or rely on a new contract. It was the defendant who sought to show that the conversation he had with Mr. Cobler amounted to a contract which exempted him from liability and which was an acquiescence in his refusal to accept the merchandise. The plaintiff very properly replied to this allegation of an arrangement with the agent by a denial of any agreement. What did take place according to the plaintiff's showing was that Mr. Cobler proposed to the defendant that the latter unload the lumber and have it inspected. That was entirely consistent with the contract for it called for an indefinite amount of lumber of varying grades, and the determination of the quantity of each grade at the place of delivery was within the provision of the contract if there were any dispute as to measurements and quality. There was a misapprehension therefore by the learned court with respect to the attitude of the parties at the close of the testimony. Moreover there was no evidence of the authority of the agent to enter into an agreement releasing the defendant from his liability to the plaintiff by an acceptance of the lumber from him. The agent did not sell the lumber to the defendant; the negotiation was directly between the parties. It is true Mr. Cobler had been at the defendant's place of business some months before and proposed to sell him a quantity of Idaho white pine, but the defendant declined to buy and no further transactions were had between him and the defendant up to the time when the alleged agreement for unloading the car was made. The defendant sent an order to Mr. Cobler with respect to Idaho white pine, but that was sent on to the plaintiff and has no connection with the

contract under consideration. Not only was there no evidence that Cobler had the authority assumed in the charge, but the testimony of the agent was directly to the contrary. His business was to sell lumber, not to release the debtors of his employer from their liability. As such agent he would have no implied authority to settle the disputed claims or to release his principal's legal demands. Nothing less than a general or a special authority or a ratification by the principal could give force to such act: Ludwig v. Gorsuch, 154 Pa. 413; Mange Weiner Co. v. Worsham, 27 Pa. Superior Ct. 315; Villar v. Coupe, 62 Pa. Superior Ct. 422; W. J. Gilmore Drug Co. v. Goldsmith, 79 Pa. Superior Ct. 149. Giving therefore to the alleged contract the meaning assumed for it, it was without effect because of an entire lack of evidence that the agent had authority to release the plaintiff's claim or to surrender any of its rights.

There is the further consideration with respect to which no instruction was given to the jury; the defendant admits that he took charge of the lumber, stored it on his premises, and afterward sold it at public auction. That he was without authority so to do, we think is clear. By refusing to accept the lumber, his control over it ceased. The payment of the freight bill gave him no lien on the freight. Where a purchaser receives merchandise into his possession before he knows what its quality is, he has, if dissatisfied, two courses, either of which he may adopt. He can retain it and claim a reduction because of different or inferior quality, or he can refuse to receive it and attempt to rescind the contract. In the latter case, not having any right of property, he cannot exercise any rights of ownership over, nor can he sell it where the necessities of the case do not warrant such action: Buffington v. Quantin, 17 Pa. 310; Estes v. Kaufman, 44 Pa. Superior Ct. 114; Luella Coal & Coke Co. v. Gano, 61

Pa. Superior Ct. 37. We have not found in the evidence brought up a justification of the sale of the property, and this was a material question in the case under all of the evidence.

No instruction was given to the jury on the subject of misrepresentation as that was not necessary in the view which the court took of the issue presented. As the question was raised in the pleadings, however, and evidence was introduced with respect thereto, it is not improper to note that the description of lumber which the defendant says he relied on was given to him some months before he gave his order to the plaintiff. The description was given by Mr. Cobler and related to an entirely different kind of lumber than that which was the subject of the contract. It is admitted by the defendant that the lumber which they were then talking about was Idaho white pine, and Mr. Cobler's testimony is to the same effect. There was no evidence in the case of any other representation with reference to the quality of Wisconsin white pine than is contained in the contract and correspondence between the parties, and as the defendant ordered the car load in question "for a sample" it is fair to assume that he did not rely on representations as to that kind of pine with respect to that particular shipment. A careful consideration of the case satisfies us that the charge failed to present the issue raised by the pleadings and the evidence and that thereby a misleading impression was given to the jury with respect to the real questions presented in the case.

The 1st, 2d, 3d, 4th, 5th and 6th assignments are sustained. A consideration of the others is unnecessary.

The judgment is reversed with a new venire.