# Cain *v.* Marick, Appellant.

*Contracts—Principal and agent—Commissions—Evidence—Parol—Admissibility.*

In an action of assumpsit on an oral contract for commissions upon the sale of real estate, there was evidence of an oral agreement to accept a commission of three per cent of the sale price, and later on another agreement to accept a commission of $250.00, afterward reduced to writing.

Under such circumstances it was reversible error for the court to instruct the jury that if the written agreement to accept $250.00 commission was signed after the execution of the contract of sale, the agreement to accept three per cent was controlling, if proved. Such instruction was proper only if the jury found that no agreement as to a commission of $250.00 was made until plaintiff's right to the commission under the earlier agreement had been earned.

It was further error for the court to admit testimony that the plaintiff's agent signed the written agreement subject to the plaintiff's ratification.

Such parol testimony, in the absence of evidence of fraud, mistake or accident, was inadmissible to destroy the integrity of a written instrument.

Argued April 28, 1927. Appeal No. 77, April T., 1927, by defendant from judgment of C. P. Allegheny County, July T., 1924, No. 478, in the case of M. B. Cain v. Simon Marick. Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Assumpsit on a contract for commissions for the sale of land. Before MACFARLANE, CARNAHAN and REID, JJ.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $2,439.04 and interest and judgment thereon. Defendant appealed.

*Errors assigned* were the charge of the court and rulings on evidence.

*Charles H. Sachs, of Sachs & Caplin,* and with him *C. F. Patterson* and *Levy & Harrison,* for appellant.— Parol evidence, varying the terms of the written contract, should not have been admitted: Lowry v. Roy, 238 Pa. 9; Keys v. Hanscom Bros., 288 Pa. 389; Bank of Hooversville v. Sagerson et al., 283 Pa. 406; Lake Erie Seed Co. v. Edwards, 86 Pa. Superior Ct. 103; Singer Manufacturing Company v. Christian, 211 Pa. 534; Keough v. Leslie, 92 Pa. 424; Caley v. Railroad

Company, 80 Pa. 363; Danish Pride Milk Products Co.
v. Marcus Bros., 272 Pa. 340.

*Thomas L. Kane,* for appellee.—Parol testimony
was admissible to show that the written contract was
unauthorized and obtained through fraud: Noon et al.
v. Rodestein, 89 Pa. Superior Ct. 153; Black Co. v.
Baker, 88 Pa. Superior Ct. 206; Marquette-Bailey Co.
v. Gibbony, 87 Pa. Superior Ct. 243; Rettew Co. v.
Heller, 85 Pa. Superior Ct. 418; Braunschweiger et al.
v. Waits, 179 Pa. 47; Bucklin v. Davidson, 155 Pa. 362;
Bruce v. Loeb & Loeb, 78 Pa. Superior Ct. 22; Gordon
v. Great Atl. & Pac. Tea Co., 243 Pa. 330; Sulkin v.
Gilbert, 218 Pa. 255; Dinch v. Workman, 84 Pa. Su-
perior Ct. 39; W. J. Gilmore Drug Co. v. Goldsmith, 79
Pa. Superior Ct. 149; Mott et al. v. Kaldes, 288 Pa.
264; Weiss et ux. v. London G. & A. Co., Ltd., 285 Pa.
251; First Nat'l. Bank of N. J. v. Cattie Bros., 285
Pa. 202.

Opinion by Gawthrop, J., July 8, 1927:

This is a suit by a real estate broker for a commis-
sion for securing a purchaser for certain real estate
of defendant. The latter has appealed from the judg-
ment entered on a verdict against him. The assign-
ments of error complain of: (1) the instructions of
the trial judge to the jury; (2) the admission of cer-
tain evidence.

It is undisputed that defendant went to plaintiff's
office March 7, 1924, to secure his services in procuring
a purchaser for the real estate involved in this suit.
He found in charge of the office one Lowther, one of
plaintiff's salesmen, on whose testimony plaintiff's
right to recover depends. This witness testified to the
following facts: Defendant described the property
which he desired to sell and Lowther asked for the ex-
clusive right to sell it. Defendant refused this request

because the property was in the hands of other agents. Lowther told defendant that plaintiff would charge a commission of five per centum and that defendant "would have to set his price in accordance with that commission." Defendant said that "was all right," and fixed the net selling price at $74,500. Lowther said that the asking price would be $78,225, which would take care of plaintiff's commission. March 10, 1924, defendant called on Lowther and made the asking price $78,000. March 13, 1924, defendant called on Lowther again and dropped the asking price to $77,000. On the following Sunday Lowther took Messrs. Gold and Hansel to the property and introduced them to defendant. Gold asked defendant the best price he would take for the property. Lowther said, "Dr. Marick, I have already given the price that we have agreed upon in my office on Thursday." Defendant said, "I don't care what you people agree upon, my price is $74,500." The next day defendant called at plaintiff's office and Lowther agreed to reduce plaintiff's commission to three per centum in view of the reduction in the asking price for the property to $74,500. Lowther then telephoned to Gold who went to plaintiff's office and met Lowther and defendant, and finally made an offer of $74,000 for the property, which defendant agreed to accept. Lowther, defendant and Gold then went to the office of an attorney-at-law, Mr. Teplitz, for the purpose of having drawn an agreement of sale. The attorney drew an agreement in duplicate naming one Barad as the purchaser. Defendant signed the agreement and received a check for $1,000 on account of the purchase price. After the agreement of sale had been signed and defendant had received the check, Lowther and defendant signed a writing, of which the following is a copy:

"Made this 17th day of March between S. W. Marick and M. B. Cain witness whereas, the said Marick has

through said Cain as broker sold to Joseph Barad premises #833-37-41-45-49-53-34-40-44-48 and 52 for $74,000.

Now this is to certify that said employment was upon condition that the said broker is to receive sum of $250 in full compensation for his commissions to be paid on the consumation of the transfer and delivery of deed and that if said transfer is not consumated and said deed not delivered for any reason, the said broker is to receive no compensation whatever.

Witness the hands and seals of the parties the day and year above written.

S. W. Marick, (SEAL)

M. B. Cain,

Per T. J. Lowther, (SEAL).

Witnessed by
    A. C. Teplitz.''

Lowther's explanation of the reason for his signing this paper and the circumstances in which it was signed was that defendant ''reminded me that my party had not bought, ...... that I didn't know Barad,'' and that $250 ''was the amount I would get or nothing,'' and ''the reason I signed that paper was because I believed them when they told me that my party had not bought. I was being hornswoggled out of my commission,'' ...... and that when he signed it he told them that he would sign it ''subject to the approval of Mr. M. B. Cain.''

The facts that plaintiff was employed by defendant to procure a purchaser of the real estate and that the latter was the efficient cause of the sale were conceded at the trial. Defendant testified that the original agreement between him and Lowther was that plaintiff was to procure a purchaser willing to pay a price which would net defendant $74,500 after payment of plaintiff's commission, but that the amount of the commission was not mentioned; that when Lowther had

failed for some time to procure a purchaser at such a price he offered to defendant to take a commission of $250, if the latter would accept an offer of $74,000 which had been made by Gold; that defendant agreed to sell at that price if Lowther would give him a written agreement to take a commission of $250; that Lowther agreed to do it and that he then went with Gold and Lowther to the office of Mr. Teplitz, where the agreement of March 17th, above quoted, was drawn and executed before the offer of $74,000 was accepted and the contract of sale executed. The learned trial judge submitted to the jury the questions whether there was an agreement between the parties to the effect that defendant's property should be sold for $74,000, and that plaintiff was to receive a commission of three per centum for his services, and whether the written agreement of March 17th to accept a commission of $250 was executed before or after the agreement of sale was formally executed, and whether the latter agreement as to commissions was subject to the approval of plaintiff. He instructed the jury that their first consideration was to determine the order in which these papers were signed, and that if they should find that the agreement to accept a commission of $250 was executed after the contract of sale was executed, or should find that the commission agreement was signed by Lowther subject to the approval of plaintiff and that the latter did not approve it, then the commission agreement was not controlling and they could allow plaintiff a commission of three per centum of $74,000.

Appellant's contention that this instruction was erroneous, and harmful to him, must be sustained. The able and careful trial judge seems to have overlooked the fact that defendant testified that he and Lowther orally agreed upon a commission of $250 before he agreed to accept Gold's offer of $74,000 and before the parties went to the office of Mr. Teplitz. This evidence

made it necessary for the trial judge to submit to the jury the question whether such an oral agreement was made at that time. With that question answered in the affirmative, the order in which the two papers were signed at the office of Mr. Teplitz is not controlling, because the status of plaintiff in respect to a commission on a selling price of $74,000 would be fixed by the oral agreement, the paper subsequently executed, incorporating the terms of said agreement, being merely evidence of what the oral agreement was. In such circumstances the question, which paper was executed first, was not material and the instruction that if the written agreement to accept a commission of $250 was signed after the execution of the contract of sale, the agreement to pay three per centum on $74,000 was controlling if proved, amounts to reversible error. That instruction was proper only if the jury found that no agreement as to a commission of $250 was made until after plaintiff's rights to commissions under the agreement which he alleged and sought to establish had been earned.

The only other question raised is whether error was committed in permitting Lowther to testify in rebuttal that when he signed the paper fixing $250 as full compensation for plaintiff's commissions he told defendant that he "would sign that paper subject to the approval of Mr. M. B. Cain." We are clear that the evidence was inadmissible. If the agreement to fix plaintiff's commissions at $250 was made at the time Lowther testified it was made, by the paper of March 17th, and after plaintiff had become entitled to a three per centum commission on $74,000, the evidence was immaterial, because, in such circumstances, the burden was on defendant to show the authority of the agent to surrender his principal's right to a commission already earned, or to show a ratification by the principal of the agent's act if unauthorized: W. J. Gil-

more Drug Co. v. Goldsmith, 79 Pa. Superior Ct. 149; Marquette-Bailey Lumber Co. v. Gibboney, 87 Pa. Superior Ct. 243. Lowther denied that he had any authority to sign the paper and there was no evidence that he had such authority. His business was to work in the interest of his employer and not to release debtors of his employer from their liability. But, if an agreement fixing plaintiff's commission at $250 was made by the agent, Lowther, and defendant before plaintiff became entitled to commissions under a former agreement, and the new agreement was reduced to writing and signed by defendant and Lowther, the latter cannot, according to familiar authorities, be permitted to destroy the integrity of the written instrument by testimony which does not tend to show fraud, accident or mistake in procuring it. (Bank of Hooversville v. Sagerson, 283 Pa. 406.) The evidence, the admission of which is complained of, did not tend to show fraud, accident or mistake. It merely tended to nullify a plain business writing. If the rule as to parol evidence to vary written instruments is to have any application, it should be to such a case as this.

The judgment of the court below is reversed and a new trial awarded.