[No. 28128. Department One. March 17, 1941.]

JOHN LETRES, *Respondent*, v. WASHINGTON CO-OPERATIVE CHICK ASSOCIATION, *Appellant*.[1]

[1] Reported in 111 P. (2d) 594.

*Frank M. Allyn,* for appellant.

*Sather & Livesey* and *Burton A. Kingsbury,* for respondent.

MAIN, J.—This action was brought to recover a money judgment. To the complaint a demurrer was interposed, and also a motion to strike. The demurrer was overruled, and the motion was, in part, granted. An amended complaint was filed, to which there was no demurrer. The answer denied liability and pleaded two affirmative defenses. The trial was to the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of $850.23. The defendant moved for judgment notwithstanding the verdict and also for a new trial, both of which motions were overruled. Judgment was entered upon the verdict, from which the defendant appealed.

The appellant, the Washington Co-Operative Chick Association, a corporation, was engaged in the business of hatching and producing chicks and poultry stock. The respondent was engaged in the business of raising poultry for the market. November 21, 1938, the respondent ordered thirteen hundred chicks from the appellant, which were to be hatched between March 10 and March 20, 1939, and were to be delivered when they were ten days old.

About March 25, 1939, a representative of the appellant called upon the respondent and informed him that a disease known as chick bronchitis had broken out in the appellant's hatchery, and wanted the respondent to take the chicks when they were hatched as day-old chicks so as to avoid the danger of their being exposed to the disease. The respondent said that he could not get his brooder house ready so soon, but suggested that he would take them when they were five days old. This was agreed to.

The respondent testified that, at this time, it was said to him by the representative of the appellant that the latter would be responsible for all losses in case the chicks developed the disease. The appellant's representative testified that the understanding was that all chicks which died of the disease, in case they contracted it, would be replaced. The chicks were delivered when five days old, and nine days later they began coming down with chick bronchitis. The respondent notified the appellant, and it sent a representative to look at the chicks, who said the chicks had the disease. A few days later, at the respondent's request, the appellant took the chicks back, with the exception of seventy-two which had died of the disease.

The day after taking the chicks back the appellant mailed to the respondent a check for the amount he had paid for the chicks. A few days later, after the respondent consulted with his counsel, the check was returned. This action was then instituted, in which the respondent sought to recover the amount paid for the chicks, as well as other damages he claims to have sustained. The purchase price was thereafter deposited in the registry of the court.

The parties disagree as to the basis of the action. The appellant says that it is an action for breach of warranty. The respondent contends that it is not an action for breach of warranty, but an action based upon an oral contract to pay all losses sustained. We are of the view that the respondent's theory of the action is the correct one. Generally speaking, a warranty is a statement or representation having reference to the character, quality, or title of the goods. In *Hausken v. Hodson-Feenaughty Co.*, 109 Wash. 606, 187 Pac. 319, it was said:

"A warranty is a statement or representation made by the seller of goods contemporaneously with and as a

part of the contract of sale, though collateral to the express object of it, having reference to the character, quality, or title of the goods, and by which he promises that certain facts are or shall be as he represents them."

The first question is whether the respondent had a right to recover the purchase price, as well as damages. In the complaint, he sought both. The appellant calls attention to Rem. Rev. Stat., § 5836-69 [P. C. § 6227-69], which is one of the sections of the uniform sales act, and this section covers the matter of the remedy of the buyer when there is a breach of warranty. There is nothing in that section, however, as we view it, which prevents the bringing of an action on an express agreement to reimburse the buyer for all losses that he may sustain.

If a contract is rescinded by mutual consent or by demand on one side acquiesced in by the other, and there is no express reservation of claims for damages previously sustained under it, there is an implied waiver of any such claims. *Stanley Drug Co. v. Smith, Kline & French Laboratories*, 313 Pa. 368, 170 Atl. 274; 3 Black on Rescission and Cancellation (2d ed.), 1666, § 704.

In this case, the jury had a right to find that there was an express agreement that the appellant would be responsible for all losses; and, this being true, it did not deprive the respondent of the right to recover the purchase price, as well as losses after the chicks had been returned.

In order to work a rescission, there must be an agreement to that effect, express or implied, or it must be rescinded by operation of law. In 12 Am. Jur. 1011, § 431, it is said:

"As a contract is made by the joint will of two parties, it can be rescinded only by the joint will of the

two parties. It is obvious that one of the parties can no more rescind the contract, without the other's express or implied assent, than he alone can make it. A proposal to rescind a contract does not become a binding agreement unless it is accepted before its withdrawal."

Silence, when an offer of rescission is made, does not, as a general rule, operate as an acceptance, unless the attendant circumstances are such as require the one to whom the offer is made to speak. An agreement inferred from silence rests upon the principle of estoppel. 12 Am. Jur. 533, § 40.

The representative of the appellant who took the chicks away testified:

"Q. And after you had loaded them, what else happened? A. After we got all the chicks in the boxes we carried them out and put them in the truck, and as I closed the doors on the truck and started to leave I said: 'We will send your check back out to you tomorrow.' Q. What did John say, if anything? A. He never said anything."

It thus appears that there are no circumstances here from which it can be inferred that the respondent agreed to accept the check. Had the respondent accepted the check at the time it was tendered, a different question would be presented, upon which we express no opinion.

The measure of damages in a case of this kind is such damages as directly and naturally would result in the ordinary course of events. Such damages include the loss which the respondent sustained by reason of the balance of his chickens having become infected, many of which died. *Glaspey v. Wool Growers Service Corp.*, 151 Wash. 683, 277 Pac. 70.

The appellant complains of the refusal of the court to give an instruction to the effect that, if, when

the chicks were taken back, there was an understanding that the appellant would pay the purchase price to the respondent, and that thereafter the appellant tendered the amount of such purchase price to the respondent, the sale was thereby rescinded. This instruction would have been proper to give had there been any evidence upon which to base it. It appears from what has been said above that, when it was stated that the check would be returned the next day, the respondent made no reply, and, that being true, there was no agreement to rescind, and there was no rescission by operation of law. There was no error in refusing the instruction.

 Complaint is also made of the failure of the court to give a requested instruction which covered the matter of the duty of the respondent to minimize his damages after his flock of chickens had become infected. This also is an instruction which it would have been proper to give, but, inasmuch as it was covered by an instruction given, there was no error in its rejection. It may be admitted that this instruction was more comprehensive than the one given, but we are of the view that the one given was sufficient to inform the jury what the rule was in that regard.

Complaint is made of an instruction given in which it was stated that, if the jury found that the respondent was entitled to recover, he was entitled to recover for

" . . . the cost of feed, litter, fuel and labor expended for the care of said chicks during the time said chicks were on his premises. This item cannot exceed the sum of $118.00, and cannot be less than the sum of $52.14."

Whether there was error in this regard, we shall pass without determination because, the jury having found a much larger sum, which included damages to the

flock of chickens, this instruction would not be prejudicial, even if incorrect.

The appellant further complains of the ruling of the court in rejecting a number of requested instructions, and also of some of the instructions given. To discuss these in detail, would unduly extend this opinion. They have all been considered, and we find no prejudicial error, either in the rejection of the requests or in the instructions given.

It is finally contended that the court erred in not sustaining the appellant's motion for judgment notwithstanding the verdict, and in this connection it is contended that the verdict was based upon speculation and conjecture. The appellant contended that the chickens of the respondent did not become afflicted with chick bronchitis, but with a disease called laryngotracheitis, or died from some other cause. The evidence was in dispute upon this question. There was, however, substantial evidence to support the verdict of the jury. The flock was healthy when the chicks were delivered to the respondent; his buildings were clean; and there was also testimony that the flock of chickens had not previously contracted chick bronchitis. A witness called by the appellant, and an employee of it, on cross-examination, testified:

"Q. So that when he had it in these chicks, and then later it developed in the other fowls, in all probability it came from these chicks? A. Most likely."

There is other evidence, but it is not necessary to set it out here. A verdict does not rest upon surmise or conjecture when there is evidence that there is a greater probability that a thing happened in such a way as to fix liability upon the person charged with such liability than there is that it happened in a way for which the person so charged would not be liable. *St. Germain v. Potlatch Lumber Co.*, 76 Wash. 102, 135

Pac. 804; *Hill v. Great Northern Life Ins. Co.*, 186 Wash. 167, 57 P. (2d) 405; *Prentice Packing & Storage Co. v. United Pac. Ins. Co.*, 5 Wn. (2d) 144, 106 P. (2d) 314.

The judgment will be affirmed.

ROBINSON, C. J., BLAKE, STEINERT, and DRIVER, JJ., concur.

[1]Reported in 111 P. (2d) 565.