[No. 31821. Department One. November 2, 1951.]

B. A. HUBERT, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al.*, *Appellants*.[1]

*The Attorney General* and *Phil H. Gallagher, Assistant,* for appellant department of labor and industries.

*John T. Raftis*, for appellant Northwest Magnesite Company.

*Lindberg & Ryan*, for respondent.

[1]Reported in 236 P. (2d) 1042.

GRADY, J.—This appeal seeks a review of a judgment of the superior court, reversing an order of the department of labor and industries which had disallowed a claim of respondent that he had become totally disabled.

The record contains the testimony of the respondent, Dr. Snyder, his attending physician, and Dr. Brown and Dr. Gilpatrick. The former are general practitioners and the latter is a heart specialist. The testimony of respondent is not challenged. The expert witnesses made it clear that a difficult problem from a medical standpoint was presented, and that they were not inclined to express unqualified opinions.

On February 8, 1949, respondent sustained a lumbar sacroiliac strain while engaged in loading a heavy object onto a truck. He was hospitalized for twenty-three days. Complaint was made by him of discomfort in the lower part of his chest. The attending physician believed stomach gas was the cause of such discomfort. About forty days after discharge from the hospital, respondent consulted the same physician with reference to chest pain. Observation and treatment for gas condition for several days without substantial relief caused the physician to believe a coronary trouble existed. Tablets designed to alleviate the resultant pain afforded some relief. Cardiograms disclosed a coronary insufficiency. This is a disease of the heart caused by an insufficient amount of blood flowing through its arteries. The disease develops generally between the ages of forty and sixty years.

We gather from the collective medical testimony the disease has a mild inception and is gradually progressive; also that it does not have its inception by trauma, and that so far as is known to the medical profession, traumatic injury does not accelerate or affect the progress of the disease; that exertion, activity, and effort may precipitate the first symptoms or increase them; also that the symptoms may be precipitated without any apparent effort. The consensus of opinion of the medical witnesses was to the effect that, whenever it appeared that a heart reaction followed an exertion,

such as lifting a heavy object, it would follow either immediately or within a very short period of time.

With this background of information, it was sought to determine whether there was a causal connection between the back injury respondent sustained when he lifted the heavy object and the coronary insufficiency indicated by the cardiograms. The respondent sustained a 20% permanent partial disability by reason of the injury to his back. The evidence justifies a conclusion that the coronary insufficiency has progressed to such an extent that respondent has a permanent disability within the meaning of the workmen's compensation act. Respondent's attending physician was of the opinion that the disease had its inception a considerable length of time before the occurrence of the back injury.

Respondent testified that he was of the age of sixty-three years, had always been in good health, and never, prior to a few days after he was injured, had he felt any indication of heart ailment. He has not worked since his injury.

The testimony of Dr. Snyder on the question of causal connection between the injury sustained by respondent and his present heart condition was that the former might have been a causative factor and did in some way aggravate the pre-existing heart condition.

Dr. Brown stated that, when he and Dr. Gilpatrick examined respondent, they considered he had some degree of coronary disease, but it was not in any way related to his accident. He stated that he felt very definitely in his own mind that there was no causal relation between any heart condition which respondent had and the accident as respondent described it.

Medical testimony that there "might be" or that it "is possible" (or words of similar import) that there was a causal connection between a given accident or injury and the subsequent physical condition of an injured person is not regarded as sufficient proof, standing alone, of such fact. *Kralevich v. Department of Labor & Industries*, 23 Wn. (2d) 640, 161 P. (2d) 661; *Seattle-Tacoma Shipbuilding Co. v. Department of Labor & Industries*, 26 Wn. (2d) 233, 173 P. (2d) 786; *Jacobson v. Department of Labor & Industries,*

37 Wn. (2d) 444, 224 P. (2d) 338; *Stampas v. Department of Labor & Industries,* 38 Wn. (2d) 48, 227 P. (2d) 739; Annotation 135 A. L. R. 516.

In order to establish causal connection in a case of this kind, it must be made to appear that there is a greater probability that the heart condition was caused by the injury than from some other cause. *The Home Ins. Co. of New York v. Northern Pac. R. Co.,* 18 Wn. (2d) 798, 140 P. (2d) 507, 147 A. L. R. 849; *Letres v. Washington Co-op Chick Ass'n,* 8 Wn. (2d) 64, 111 P. (2d) 594; *Stampas v. Department of Labor & Industries, supra.*

Dr. Gilpatrick was cautious when asked for an opinion on causal connection between the injury and the subsequent heart condition. One would gather from his testimony that while there might be much doubt, medical knowledge of the subject was not so complete as to wholly exclude any reasonable probability of such connection. He expressed the thought that if respondent had injured his heart when he lifted the heavy object one would expect cardiac symptoms to follow immediately, or within a very short space of time, and such symptoms would be breathlessness, pain in the chest and signs of collapse. When asked whether there was a direct relation between the injury and the subsequent heart condition he stated: "That I couldn't answer. It wouldn't be the cause, but there might be some association." When again asked if he felt there was any such causal relation, he stated the medical evidence would be against it. On cross-examination by counsel for respondent the doctor was asked:

"Well, if the evidence indicated, Doctor, that that man hasn't worked a day since the day of the injury due to this heart condition, would that in any way alter the work he was doing, be a causative factor or even an indirect cause, did it have anything to do with the heart condition—this injury of February 18, 1949?"

The answer was as follows:

"If your statement is true, that he hasn't worked since on account of his heart injury and the fact could be proven, then, yes, we would have to assume that inasmuch as he had

been working before without any heart complaints and since then he hasn't been able to, and it was due to his heart, that he had been unable to work, the answer would be 'Yes,' but you have got to prove that he is totally disabled because of his heart."

In the cases cited above, and those referred to in the opinions, we have stated that the existence of a fact cannot rest in guess, speculation or conjecture; but, on the other hand, one having the affirmative of an issue does not have to make proof to an absolute certainty; also that it is sufficient if the evidence affords room reasonably to conclude that there is a greater probability that an injury caused an existing condition to accelerate and result in additional disability than that such disability followed the natural and ordinary progress of the disease or condition with which the person was afflicted.

The testimony of respondent that he did not feel any effect of his existing heart ailment prior to his injury, that he felt pain in the region of his heart shortly after he entered the hospital, and that such condition became progressively worse, coupled with the testimony of Dr. Snyder that there might be a causal relation between the injury and the acceleration of the heart ailment and the testimony of Dr. Gilpatrick above quoted, is sufficient to support a conclusion that there is a greater probability the injury sustained by respondent accelerated the progress of the coronary insufficiency to such an extent that he has become permanently disabled than that such acceleration was wholly independent of the injury.

The judgment is affirmed.

HILL, MALLERY, DONWORTH, and WEAVER, JJ., concur.